**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROLAND CHAVEZ, on behalf of himself and those similarly situated, | |
| Plaintiff, | No. 3:11-cv-07097-PGS-LHG |
| v. | |
| ROBERT WOOD JOHNSON HEALTH SYSTEM and ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL HAMILTON And JOHN DOES 1-10 | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS THE COMPLAINT**

**SWARTZ SWIDLER, LLC**
Attorneys for Plaintiff Roland Chavez
1878 Marlton Pike East, Ste. 10
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

ON THE BRIEF:
    Joshua S. Boyette
    Justin L. Swidler

DATED:
    February 20, 2012

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENTS OF FACTS ............................................................................................ 1

LEGAL ARGUMENT .................................................................................................... 4

   I.   STANDARD OF REVIEW ................................................................................... 4

   II.   THE COURT SHOULD EXCLUDE DEFENDANTS' ATTACHED DOCUMENTARY EVIDENCE AS PLAINTIFF'S CLAIMS ARE BASED ON DEFENDANTS' ACTUAL PRACTICES, NOT THEIR WRITTEN POLICY MANUAL .................................................... 4

   III.   PLAINTIFF HAS STATED A VALID ROUNDING CLAIM BECAUSE DEFENDANT'S ROUNDING POLICY RESULTS IN SYSTEMATIC UNDERCOMPENSATION OF DEFENDANTS' EMPLOYEES ........................................... 6

   IV.   PLAINTIFF HAS PLEADED SUFFICIENT FACTUAL MATERIAL REGARDING HIS ROUNDING CLAIM AND HIS MEAL DEDUCTION CLAIMS TO SATISFY THE PLEADING STANDARDS OF *IQBAL* AND *TWOMBLY* ....................................................... 9

      A.  Mr. Chavez has plead sufficient factual matter to establish a rounding claim violation and claim under *Iqbal* and *Twombly* because the only facts not pleaded are specific hours worked ............................................................................................................... 11

      B.  Mr. Chavez has pleaded sufficient factual matter to establish a lunch-break violation and claim under *Iqbal* and *Twombly* because the only facts not pleaded are specific hours worked ............................................................................................................... 14

   V.   IN THE ALTERNATIVE, PLAINTIFF SHOULD BE PERMITTED TO AMEND HIS COMPLAINT TO ADD THE PLEADINGS DEFENDANTS' REQUEST ........................... 16

CONCLUSION .............................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Alonzo v. Maximus, Inc*., 2011 U.S. Dist. LEXIS 150265 (C.D. Cal. Dec. 5, 2011) .................. 6, 7

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946). ................................................ 12, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 4, 12, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 4, 9, 11, 15

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 2010 U.S. App. LEXIS 13485 (3d Cir. 2010) ........................................................................................................................... 10

*East v. Bullock's, Inc*., 34 F. Supp. 2d 1176 (D. Ariz. 1998) ......................................................... 7

Fed. R. of Civ. Pro. 8 ........................................................................................................... 9, 13

*Harris v. Scriptfleet, Inc*., 2011 U.S. Dist. LEXIS 139870 (D.N.J. Dec. 6, 2011) ..... 11, 12, 13, 15

*Haskins v. VIP Wireless Consulting*, 2009 U.S. Dist. LEXIS 114136 (W.D. Pa. Dec. 7, 2009) . 10

*In re Bank of Am. Wage & Hour Empl. Litig*., 2010 U.S. Dist. LEXIS 112029 (D. Kan. Oct. 20, 2010) ................................................................................................................................... 11

*In re Rockefeller Ctr. Props., Inc. Sec. Litig*., 184 F.3d 280, 287 (3d Cir. 1999) .......................... 5

*Lum v. Bank of America*, 361 F.2d 217, 223 (3d Cir. 2004) ........................................................ 4

*Marjac, LLC v. Trenk,* 2006 U.S. Dist. LEXIS 91574 (D.N.J. Dec. 19, 2006) ............................ 5

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) .......................................................................... 4

*McClean v. Health Sys.,* 2011 U.S. Dist. LEXIS 72346 (W.D. Mo. July 6, 2011) ...................... 13

*Mell v. GNC Corp*., 2010 U.S. Dist. LEXIS 118938 (W.D. Pa. Nov. 9, 2010) ........................... 10

*Nehmelman v. Penn Nat'l Gaming, Inc.,* 2011 U.S. Dist. LEXIS 111485 (N.D. Ill. Sept. 29, 2011) ..................................................................................................................................... 8

*Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. Pa. 1993) ... 5

*Polzin v. Schreiber Foods, Inc*., 2011 U.S. Dist. LEXIS 142955 (W.D. Mo. Aug. 15, 2011) ....... 9

*Pontius v. Delta Fin. Corp*., 2005 U.S. Dist. LEXIS 46331 (W.D. Pa. Jul. 22, 2005) ................ 17

*Russell v. Ill. Bell Tel. Co*., 721 F. Supp. 2d 804 (N.D. Ill. 2010) ................................................ 8

*Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761 (11th Cir. 2008) .................................................... 9

*Stine v. Pa. State Police,* 2011 U.S. Dist. LEXIS 55826 (M.D. Pa. Apr. 19, 2011) .............. 4, 5, 6

*Taylor v. Pittsburgh Mercy Health Sys*., 2009 U.S. Dist. LEXIS 40080 (W.D. Pa. May 11, 2009) ..................................................................................................................................... 17

*Taylor v. Pittsburgh Mercy Health Sys*., 2009 U.S. Dist. LEXIS 84930 (W.D. Pa. Sept. 17, 2009) ..................................................................................................................................... 10

## Statutes

29 U.S.C. § 206, et seq. ........................................................................................................... 10

29 U.S.C. § 211(c) .................................................................................................................. 12

## Rules

Federal Rule of Civ. Pro. 12 ..................................................................................................... 5

## Regulations

29 C.F.R. § 785.18 .................................................................................................................. 14

iii

29 C.F.R. § 785.19(a).................................................................................................. 14

29 C.F.R. § 785.48(b) ............................................................................................... 6, 7

## INTRODUCTION

Defendants have moved to partially dismiss Plaintiff's claims to the extent he has alleged that he and those similarly situated were routinely underpaid as a result of two policies of Defendants, a rounding policy used in computing payroll, and a mandatory deduction of 30-minute lunch breaks. For the following reasons, Defendants' motion should be denied in its entirety.

## STATEMENTS OF FACTS

Plaintiff has alleged the following relevant factual statements in his Complaint, and has also listed reasonable inferences the Court may draw therefrom.

### **Rounding Claim**

1. Defendants utilize a computerized system which tracks the exact time (accurate to 1 minute or less) an employee clocks in and clocks out of work. *See* Complaint at ¶ 26.

2. When computing payroll, Defendants use a rounding system that rounds to 15-minute intervals. Complaint at ¶ 27.

3. At the beginning of the shift, the system will round forward to the next fifteen minute interval an employee who clocks in within eight or less minutes of the start of the shift, and will round back to the last fifteen minute interval if the employee clocks in more than eight minutes before the start of the shift. *Id.* at ¶¶ 28-29.

4. By way of example, if a shift began at 7:00 AM, an employee who clocked in at 6:53 AM would have his start time rounded forward to 7:00 AM, while an employee who clocked in at 6:51 AM would have his started time rounded back to 6:45 AM. *See id.* at ¶¶ 28-29.

5. At the end of the shift, the payroll system will round forward to the next fifteen minute interval an employee who clocks out at equal to or more than eight minutes after the end

of the shift, and will round back to the last fifteen minute interval if the employee clocks out within less than eight minutes after the end of the shift. *Id.* at ¶¶ 31-32.

6.    Accordingly, by way of example, if a shift ended at 5:00 PM, an employee who clocked out at 5:07 PM would have his shift end time rounded back to 5:00 PM, and an employee who clocked out at 5:09 PM would have his shift end time rounded forward to 5:15 PM. *Id.* at ¶¶ 31-32.

7.    Defendants also have a policy that they communicate to employees which states that employees should punch in within seven minutes before the start of their shift and within seven minutes after the end of their shift." *See id.* at ¶¶ 35, 37;

8.    Defendants also have a tardiness/attendance policy where a failure to properly clock in within seven minutes before the start of employees' shifts and within seven minutes after the end of their shifts will result in discipline. *See id.* at ¶ 39.

9.    Defendants' employees regularly and typically comply with Defendants' time clock policies, and accordingly punch in within seven minutes before the start of their shifts and within seven minutes after the end of their shifts. *See id.*

10.   Defendants' employees do not typically arrive after the official start time of their shifts, because if they did so, they would be subject to discipline. *See* Complaint at ¶ 39.

11.   Accordingly, per Defendants' rounding system, none of the up to 7 minutes per day employees routinely work at the beginning of their shifts is paid as Defendants round this time to the next 15-minute interval, the official start time of Plaintiff's and other employees' shifts. *See* Complaint at ¶ 38.

12. Similarly, at the end of the day, in order to avoid being disciplined for leaving early, Defendants' employees do not typically clock out before the end of their shifts but clock out within the seven minutes following their shifts. *See* Complaint at ¶¶ 43-45.

13. Accordingly, per Defendants' rounding system, none of the up to 7 minutes per day employees routinely work after the end beginning of their shifts is paid as Defendants round this time back to the last 15-minute interval, the official end time of Plaintiff's and other employees' shifts. *See* Complaint at ¶¶ 43-45.

## Automatic Lunch Time Deductions

14. Defendants automatically deduct from employees' paychecks 30 minutes of time, ostensibly to cover a lunch break, whether or not a lunch break is taken. *See* Complaint at ¶ 51.

15. Plaintiff and other employees routinely do not take bona-fide lunch breaks of 30 minutes but instead routinely work through some or all of this time. *See* Complaint ¶¶ 54-55.

16. As a result, Defendants' policies result in Plaintiff and other employees not being paid for the time they work on days when they do not take a bona-fide 30 minute lunch break. *See* Complaint ¶¶ 54-55.

17. Plaintiff and other employees routinely work more than 40 hours per week. *See* Complaint at ¶¶ 48, 55, 59.

18. As a result of the fact that Plaintiff and other employees routinely work more than 40 hours a week, and are not being paid for 30 minutes a day when they are regularly not taking bona-find lunch breaks, Plaintiff and other employees are not being paid required overtime wages for the time that Defendants deduct. *See*  Complaint at ¶¶ 48, 54, 55, 59.

**LEGAL ARGUMENT**

**I.    STANDARD OF REVIEW**

When considering a motion to dismiss for failure to state a claim, the Court must "accept as true all of the factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiffs." *Lum v. Bank of America*, 361 F.2d 217, 223 (3d Cir. 2004). A plaintiff must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This burden does not require "detailed factual allegations," though a formulaic recitation of the elements of a cause of action will not be sufficient. *Id*. at 555 (citations omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, the Court must "construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

**II.   THE COURT SHOULD EXCLUDE DEFENDANTS' ATTACHED DOCUMENTARY EVIDENCE AS PLAINTIFF'S CLAIMS ARE BASED ON DEFENDANTS' ACTUAL PRACTICES, NOT THEIR WRITTEN POLICY MANUAL**

In deciding a motion to dismiss, courts ordinarily "consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *See Stine v. Pa. State Police,* 2011 U.S. Dist. LEXIS 55826 (M.D. Pa. Apr. 19, 2011).  Rule 12(b) requires that if matters outside the pleading are presented to the court, they are to be excluded or the motion shall be treated as one for summary judgment under Rule 56, and all parties shall be

4

given a reasonable opportunity to present all material pertinent to such a motion. *See* Federal Rule of Civ. Pro. 12. Only "narrowly defined types of material" fit the exception to the rule against considering material outside the complaint and its attachments. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). A court *may* consider an **undisputedly authentic document** that a defendant attaches as an exhibit to a motion to dismiss **if the plaintiff's claims are based on the document**. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. Pa. 1993). However, unlike a contract that always forms the basis of a breach of contract claim, where the claims are not based on (or, in other words, created by) the document, the court should not consider the document. *See Marjac, LLC v. Trenk,* 2006 U.S. Dist. LEXIS 91574 (D.N.J. Dec. 19, 2006).

It is not enough for the material to be "directly related" to the allegations in the complaint, since "if all that were required of a document in order for it to be considered on a motion to dismiss – without any opportunity for the plaintiff to respond – were that it be directly related to the complaint, a defendant could present a one-sided case of documentary evidence with undoubted prejudicial effect on the plaintiff." *Stine v. Pa. State Police,* 2011 U.S. Dist. LEXIS 55826 *17 (M.D. Pa. Apr. 19, 2011).

In the instant matter, Defendants have attached a number of their employment policies, and an affidavit attesting to their authenticity. As an initial matter, Plaintiff does not concede the policies' authenticity or relevance at this stage of the litigation; Plaintiff notes that the policies have a last revision date of 2008, and there is no signature on the line that says "Approved By." *See, e.g.,* ECF Doc. 11-2, Exhibit A at page 4.

Second, Plaintiff's claims are not **based** on these written policies. Plaintiff has alleged that his work site had a policy and practice of rounding time and automatically deducting lunch

5

breaks that had the result of routinely underpaying him for the hours he worked. He has described the manner in which this policy and practice worked. Plaintiff's claims are not based on the fact that Defendant's practice may or may not have been memorialized in a written policy manual that Plaintiff may or may not have seen, had access to, or been subject to. Plaintiff's claims are based on his employer's *practices*, and the fact that those practices resulted in a non-payment of wages for Plaintiff and those similarly situated.

Defendant has attached its written *policies* to, in effect, present evidence that its employment *practices* were lawful and did not result in the non-payment of overtime wages. This position is inappropriate on a motion to dismiss, which is meant only to test the sufficiency of the allegations, not to weigh evidence. *Stine v. Pa. State Police*, 2011 U.S. Dist. LEXIS 55826 at *18. Accordingly, because Mr. Chavez does not acquiesce to the Court's consideration of these documents, has not had an opportunity to respond with evidence of his own, and has not conceded the documents' authenticity, the Court should exclude these documents and Defendants' arguments based on these documents from consideration of the instant motion.

## III.   PLAINTIFF HAS STATED A VALID ROUNDING CLAIM BECAUSE DEFENDANT'S ROUNDING POLICY RESULTS IN SYSTEMATIC UNDERCOMPENSATION OF DEFENDANT'S EMPLOYEES

Defendant has argued that Plaintiff's rounding claim fails because its policy for rounding time appears neutral on its face. Such an argument misses the point; regardless of how a rounding policy appears on its face, a rounding policy is not valid if it results, over a period of time, in failure to compensate employees properly for all the time they have actually worked. *See* 29 C.F.R. § 785.48(b) ("Section § 785.48(b)"). An employer's rounding practices violate § 785.48(b) if they systematically undercompensate employees. *Alonzo v. Maximus, Inc*., 2011 U.S. Dist. LEXIS 150265 (C.D. Cal. Dec. 5, 2011)

6

In other words, employers may only use a rounding policy for recording and compensating employee time if it does not "consistently result in a failure to pay employees for time worked." *Alonzo v. Maximus, Inc*., 2011 U.S. Dist. LEXIS 150265 (C.D. Cal. Dec. 5, 2011). This test has also been framed as requiring the rounding policy to, on average, neither favor overpayment nor underpayment. *East v. Bullock's, Inc*., 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998).

Defendants have instituted a rounding policy that rounds back to the previous quarter hour if an employee punches the clock within the first seven minutes of the quarter hour, and rounds forward to the next quarter hour if the employee punches in at or after eight minutes. *See* Complaint at ¶¶ 28-29. Defendants also have a policy and practice of telling employees they must punch in within seven minutes of the start of their shift, and punch out within seven minutes of the end of their shift. Complaint at ¶ 36. Finally, employees cannot and do not punch in after the start of their shifts or punch out before the end of their shifts, because doing so would result in disciplinary action (for tardiness and for leaving early). *See* Statement of Facts, *supra*, at ¶¶ 8, 10, 12. As a result, employees regularly punch in and begin working during the seven minutes before their shift, and regularly punch out and stop working in the seven minutes after the end of their shift. This practice results in the systemic and repeated underpayment of employees for the time actually worked. *See* Statement of Facts, *supra,* at ¶¶ 11, 13.

Defendant has made no real argument as to why this system does not violate Section § 785.48(b). Instead, they have made an inappropriate *evidentiary* argument that employees were not *disciplined* for clocking out more than seven minutes before a shift or seven minutes after. First of all, Defendant cannot merely assert in a motion to dismiss that no employee was ever disciplined for failing to abide by its time recording policies and practices. As already discussed

7

above, Defendant cannot produce a written policy at the motion-to-dismiss stage to rebut Mr. Chavez's allegations of an unlawful practice that may be similar but need not be identical to the written policy. Furthermore, even if the court were to consider Defendant's written time clock policy, the absence of designated discipline in the policy is not evidence that employees were not actually disciplined for violating the policy. Nor is it evidence that employees violated the policy (as a violation of the policy is required for the rounding to possibly benefit the employee).

Finally, even if Defendants could assert at the motion-to-dismiss stage that no employees were ever disciplined for violating the E-Times Policy, it would not matter, since what matters is whether Defendant's payroll policies and practices, taken together, caused employees to be systematically underpaid. Regardless of whether there is a sanction attached to Defendants' time clock policy, **asking staff to clock in early within seven minutes of a shift coupled with a policy that will always round time *against* the interest of the employee as long as the time-punch occurs within seven minutes of a shift states a plausible claim for routine underpayment of employees.** *See* Statement of Facts, *supra,* at ¶¶ 11, 13.

Defendants are not the first employer to have such a combined policy that looks neutral but actually always works against employees. In *Nehmelman v. Penn Nat'l Gaming, Inc.,* 2011 U.S. Dist. LEXIS 111485 *20-21 (N.D. Ill. Sept. 29, 2011), plaintiffs alleged the exact same policy, and the exact same systematic underpayment of employees. The court in *Nehmelman* found that such a policy and practice was a violation of FLSA, and held that the application of this policy to all employees rendered them similarly situated for the purpose of preliminary collective action certification. *Id; see also Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 820 (N.D. Ill. 2010) ("If, as plaintiffs allege, Illinois Bell's time rounding and log out policies often caused plaintiffs to work unpaid overtime in increments of under eight minutes, then these

company-wide practices may have resulted in unpaid overtime work."); *see also Polzin v. Schreiber Foods, Inc.*, 2011 U.S. Dist. LEXIS 142955 (W.D. Mo. Aug. 15, 2011) (rounding policy that systematically underpaid plaintiff was a sufficient common policy to support preliminary certification).

It is unclear whether Defendants ever actually argue that the policy and practices as Mr. Chavez describes them would be lawful. However, to the extent that this is Defendants' argument, the DOL regulations and the above case law unequivocally demonstrates the failure of this argument. Accordingly, this Court should deny Defendants' motion to dismiss to the extent that it argues that the rounding policy Mr. Chavez has described is proper as a matter of law. Mr. Chavez has pleaded that Defendants have a rounding policy that systematically underpays employees for their work, and as such, has adequately pleaded a violation of FLSA.

## IV. PLAINTIFF HAS PLEADED SUFFICIENT FACTUAL MATERIAL REGARDING HIS ROUNDING CLAIM AND HIS MEAL DEDUCTION CLAIMS TO SATISFY THE PLEADING STANDARDS OF *IQBAL* AND *TWOMBLY*

Having properly pleaded that Defendants have unlawful policies and practices under FLSA with regard to its rounding policy and its lunch deductions policy, Mr. Chavez has also pleaded sufficient factual matter to show that he himself was personally and adversely affected by these practices under *Iqbal* and *Twombly*.

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement" to put the defendants on notice of the claims against them. Fed.R.Civ.P. 8(a)(2). To meet this standard, the plaintiffs' claim must be "plausible on its face" such that the Court may draw a "reasonable inference" that the defendants are liable. *Twombly*, 550 U.S. at 556. Unlike the complex antitrust scheme at issue in *Twombly*, the requirements to state a claim of a FLSA violation are simple and straightforward. *Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008). To successfully state a FLSA claim, a plaintiff need only show "a failure to pay

9

overtime compensation and/or minimum wages to covered employees." *Id.*; see 29 U.S.C. §§ 206, 207, 215(a)(2).

In the Third Circuit, courts comply with the mandates of *Twombly* and *Iqbal* by engaging in a two-step process. *Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 2010 U.S. App. LEXIS 13485, 9-10 (3d Cir. 2010). First, the court distinguishes between factual allegations and legal conclusions in the complaint; second, if there are factual allegations in the complaint, the court assumes their veracity and draws all inferences favorable to the non-moving party, and then determines whether these factual allegations and inferences show an entitlement to relief.

The Third Circuit has not explicitly addressed how precisely a FLSA claim must be plead under *Iqbal/Twombly. See Mell v. GNC Corp*., 2010 U.S. Dist. LEXIS 118938 at *15 (W.D. Pa. Nov. 9, 2010). Similarly, only a handful of lower court cases within this Circuit have addressed the factual averments necessary to plead a FLSA case. *See id.* Most of these cases have held that relatively simple allegations are sufficient to support a FLSA claim for purposes of surviving a motion to dismiss – in part, because of the simplicity of the elements necessary to prove a FLSA violation.

In *Taylor v. Pittsburgh Mercy Health Sys*., 2009 U.S. Dist. LEXIS 84930, 4-5 (W.D. Pa. Sept. 17, 2009), the court held that pleadings that stated the plaintiffs worked after the end of their scheduled shifts and were not paid for such time was sufficient to state a claim for relief under FLSA. Similarly, in *Haskins v. VIP Wireless Consulting*, 2009 U.S. Dist. LEXIS 114136 (W.D. Pa. Dec. 7, 2009), the court held that the plaintiff's complaint stated a plausible claim for relief where there were factual allegations referencing the plaintiff's job title, that the plaintiff worked on average more than 60 hours per week, and that the plaintiff did not receive overtime pay for hours worked more than 40 hours per week. Likewise, in *Harris v. Scriptfleet, Inc*., 2011

U.S. Dist. LEXIS 139870 (D.N.J. Dec. 6, 2011), the court held that the plaintiff had pleaded a plausible claim for relief where he alleged that he worked in excess of 40 hours per week and was not paid overtime and routinely was unpaid for hours of waiting time.

In *In re Bank of Am. Wage & Hour Empl. Litig.*, 2010 U.S. Dist. LEXIS 112029 (D. Kan. Oct. 20, 2010), a nationwide FLSA collective action, the court denied defendant's motion to dismiss on *Twombly/Iqbal* grounds, holding that the plaintiffs did not need to allege what any particular plaintiff earned as an hourly wage or how often and how much a particular plaintiff was required to work in excess of 40 hours per week, so long as the pleadings alleged that the plaintiffs were otherwise eligible to receive overtime compensation and worked more than 40 hours in any given week without receiving compensation for those overtime hours.

**A. Mr. Chavez has plead sufficient factual matter to establish a rounding claim violation and claim under *Iqbal* and *Twombly* because the only facts not pleaded are specific hours worked.**

Mr. Chavez has pleaded that he routinely works more than 40 hours in a week. *See* Complaint at ¶¶ 48, 55, 59. In paragraph 59 of his Complaint, Mr. Chavez details a specific example week in which he worked 74 hours in one week. In paragraphs 38 and 44, Mr. Chavez pleads that he typically clocks in and begins working a few minutes before the beginning of his shift, and typically clocks out and stops working a few minutes after the end of his shift.

With regard to Mr. Chavez' rounding claim, Mr. Chavez admits that paragraphs 38 and 44 of his Complaint are not exhaustingly detailed. That does, not however, make them conclusory legal allegations instead of factual averments. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint does not require detailed factual allegations). Without Defendant's payroll documents, Mr. Chavez is unable to say that, for instance, on April 3, 2011,

he clocked in five minutes before the start of his shift and clocked out six minutes after the end of his shift, entitling him to an additional eleven minutes of overtime pay for that week.

Importantly, however, the Fair Labor Standards Act does not require Mr. Chavez to keep his own payroll records; that responsibility is allocated by law to employers. *See* 29 U.S.C. § 211(c); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).  Accordingly, Defendants cannot use *Iqbal* and *Twombly* to <u>require</u> Mr. Chavez to plead his specific hours worked before he has had a chance to take discovery of Defendants' payroll records. *See Harris v. Scriptfleet, Inc*., 2011 U.S. Dist. LEXIS 139870 (D.N.J. Dec. 6, 2011). **"It cannot be the case that a plaintiff must plead specific instances of unpaid overtime or minimum wage violations before being allowed to proceed to discovery to access the employer's records."** *Id.* (emphasis added).

Furthermore, Mr. Chavez was an hourly employee whose hours were recorded by Defendants. When deciding a motion to dismiss on *Iqbal* grounds, courts must use their judicial experience and common sense to determine if there are sufficient alleged facts for the litigation to proceed. *See Iqbal*, 556 U.S. 662 (2009). The purpose of Rule 8(a) is to apprise Defendants of the claims against them and allow them to formulate a response. Defendants cannot argue that it does not understand the claim that Mr. Chavez is making, or that he has provided insufficient factual detail for Defendants' management and attorneys to understand exactly which of Mr. Chavez' payroll records they need to be looking at (Hint: **<u>all of them</u>**).

The recently decided case of *Harris v. Scriptfleet* is directly on point. *Harris v. Scriptfleet, Inc*., 2011 U.S. Dist. LEXIS 139870 (D.N.J. Dec. 6, 2011). In *Harris,* Judge Chesler identified the following factual allegations in the plaintiff's complaint: (1) the plaintiff's dates of employment; (2) that the plaintiff regularly worked more than 40 hours per week without being

paid overtime; (3) that the plaintiff was paid on a flat rate basis; (4) that the plaintiff was not compensated for waiting periods; (5) that the defendants made deductions from the plaintiff's wages and refused to reimburse for expenses. *Id.* at *9. Judge Chesler specifically rejected the defendants' argument that the plaintiff's complaint should be dismissed for failure to allege a specific estimate of the hours worked for which he was either under- or uncompensated for, holding that FLSA placed the burden to maintain payroll records on the employer. *Id.* at *10-12.

*McClean v. Health Sys.* is equally illustrative. 2011 U.S. Dist. LEXIS 72346 (W.D. Mo. July 6, 2011). In *McClean*, defendants moved to dismiss a plaintiff's claim for lack of factual specificity. *Id.* The court denied defendants' motion and held that it was sufficient to state a rounding claim under Rule 8(a) and *Iqbal* and *Twombly* for the plaintiffs to allege **only** the following three facts: (1) that defendant reduced its employees hours by rounding their hours to the nearest quarter hour of time to their detriment; (2) that this policy resulted in plaintiffs and all other similarly situated employees being denied wages including overtime premiums; (3) that defendants had a computerized timekeeping system in place that could have tracked employees' actual hours worked. *See id.* at *10-11 (noting that while plaintiffs "could have chosen to state more, to require them to plead, for example, specific minutes on specific days for which they were denied wages would be fact pleading inconsistent with *Iqbal*.")

In the instant matter, Mr. Chavez has pleaded more than enough factual content to state a plausible claim for relief. He has pleaded that he routinely worked overtime, routinely worked before and after his shift, and was not paid for this. Rule 8(a) and *Iqbal* and *Twombly* require a plaintiff to plead a factually plausible claim. Not only is it plausible that Mr. Chavez was underpaid as a result of Defendant's rounding policy, it is easily verifiable; all Defendants need to do is glance at their own payroll records.

If the Court accepts as true, as it must on a motion to dismiss, that Mr. Chavez has **routinely** worked more than 40 hours per week, and that he **routinely** worked before and after his shift, and that this time was always rounded away to his detriment, the court can reasonably infer that Mr. Chavez was not paid overtime wages due and that Defendants violated the FLSA.

**B. Mr. Chavez has pleaded sufficient factual matter to establish a lunch-break violation and claim under *Iqbal* and *Twombly* because the only facts not pleaded are specific hours worked.**

The FLSA requires that employees be compensated for all time worked. However, bona fide meal periods are not work time, and need not be compensated. *See* 29 C.F.R. § 785.19(a). In order to qualify as a non-compensable bona fide meal period, the period must ordinarily be at least 30 minutes in length. *Id.* Coffee breaks and/or time for snacks do not qualify as bona fide meal periods, but rather are compensable rest periods. *Id.* An employee is not on a bona fide meal period if he is required to perform any duties, whether active or inactive, while eating. *Id.* A rest period, running from about 5 to 20 minutes, promotes the efficiency of workers and must be counted as hours worked. *See* 29 C.F.R. § 785.18.

In paragraphs 50-53 of his complaint, Mr. Chavez makes factual allegations about the existence of a policy by which defendants automatically deducted 30-minutes from the time records of its employees to reflect a 30-minute lunch break. Mr. Chavez has also stated that this time would be deducted regardless of whether employees actually took a lunch break. In paragraph 54, Mr. Chavez pleads that he himself was routinely docked for 30-minute lunch breaks when he did not take a thirty minute lunch break.

Defendants may have difficulty establishing that Mr. Chavez either was or was not compensated for times when Mr. Chavez worked but was not paid due to the mandatory meal break deductions policy, since they did not require employees to punch in and out for their

14

breaks. This failure to track hours, however, is not Mr. Chavez's, and cannot be used to artificially heighten his pleading standard. The principle articulated in *Harris* is sound whether it deals with records that Defendants kept, or records that Defendants failed to keep: it is inherently unfair and unproductive to the resolution of overtime claims to force a plaintiff to plead specific instances in which he was unpaid before he has had a chance to take discovery. *See Harris v. Scriptfleet, Inc*., 2011 U.S. Dist. LEXIS 139870 *10-12 (D.N.J. Dec. 6, 2011).

If, when the time comes, Defendant is unable to provide records that show when Mr. Chavez was working instead of taking a 30-minute lunch break, Mr. Chavez will have the opportunity to prove the hours he worked by providing a good faith estimate. At the pleadings stage, however, it is more than sufficient for Mr. Chavez to allege that Defendants had a lunch break policy that resulted in the underpayment of his wages, *see* Complaint at ¶¶ 50-53, and that Mr. Chavez was routinely docked for time that he actually worked without pay as a result of this policy. *See id.* at ¶ 54; *see also Harris*, 2011 U.S. Dist. LEXIS 139870 (D.N.J. Dec. 6, 2011).

Far from being a conclusory allegation, as that term is understood by *Iqbal*, the allegation that Mr. Chavez routinely failed to take a lunch break is a fact to be proven or disproven. It is possible Mr. Chavez routinely failed to take a lunch break. It is also possible that Mr. Chavez occasionally failed to take a lunch break, sporadically failed to a lunch break, or almost never failed to take a lunch break. The question before the court is, if the court accepts as true that Chavez' failure to take a lunch break was routine, is that sufficient to raise a reasonable expectation that discovery will reveal evidence of a FLSA violation? *See Twombly,* 550 U.S. at 556. Plaintiff's counsel would respectfully suggest that the answer is an unequivocal yes.

*Iqbal* and *Twombly* are not meant to turn civil complaints alleging simple violations of law into exhaustively detailed records that could only be compiled *after* discovery has been

15

taken. To do so would turn a plaintiff's day in court into Catch-22. The only question this Court must answer is whether it is plausible that Defendants violated the law in the manner Mr. Chavez alleges they did – i.e., is it plausible that Mr. Chavez is owed wages he was not paid for. The Court must use its judicial experience and common sense in making this determination. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

If the court accepts as true that Mr. Chavez was routinely docked for 30-minute lunch breaks when he did not take a 30-minute lunch break, the court can reasonably infer that this practice also resulted in Mr. Chavez' underpayment and a violation of FLSA. Accordingly, there is no basis for denying Mr. Chavez' mandatory lunch-break claim under *Iqbal* and *Twombly* for insufficient factual pleading, and Defendants motion to dismiss should be denied.

## V.   IN THE ALTERNATIVE, PLAINTIFF SHOULD BE PERMITTED TO AMEND HIS COMPLAINT TO ADD THE PLEADINGS DEFENDANT'S REQUEST

The above argument should not be taken to suggest that that Mr. Chavez *could not* provide more factual details about his hours worked if required to do so by the court. With a calendar, Mr. Chavez could compile and provide the sort of good-faith estimate of extra time worked that would allow him to recover under the evidentiary burden-shifting framework for proving hours in FLSA cases established by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (U.S. 1946).

Accordingly, if this Court finds that Mr. Chavez has not pleaded sufficient factual details under *Iqbal*, Mr. Chavez respectfully requests that he be given the right to amend his complaint to allege additional facts. However, these additional allegations will be significantly less precise than Defendant's own records, and forcing Mr. Chavez to make these estimations in his complaint will do nothing to help Defendants prepare for this litigation; in fact, requiring such an amendment will result only in additional delay. "Time is of the essence in FLSA collective

16

actions, because the statute of limitations is not tolled until a potential plaintiff opts into the proposed collective action." *Taylor v. Pittsburgh Mercy Health Sys.*, 2009 U.S. Dist. LEXIS 40080, 2-3 (W.D. Pa. May 11, 2009); *see also Pontius v. Delta Fin. Corp.*, 2005 U.S. Dist. LEXIS 46331 (W.D. Pa. Jul. 22, 2005) (under FLSA, "the statute of limitations is not tolled" and "valid damages claims, if any, are . . . lost or reduced" over time) (citation in footnote omitted). Even if this Court believes that Plaintiff's complaint could have been plead with slightly greater factual specificity, plaintiff is simply not required to do so under *Iqbal/Twombly*. In the interests of avoiding unnecessary delay that would prejudice potential opt-in plaintiffs, the Court should also deny Defendant's motion out of the interest of justice.

## CONCLUSION

For the foregoing reason, Mr. Chavez respectfully requests that the Court deny Defendant's motion in its entirety.

Respectfully Submitted,

*/s/ Joshua S. Boyette*

Joshua S. Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1878 Marlton Pike East, Ste. 10
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

February 20, 2012

17

**CERTIFICATION OF SERVICE**

I, Joshua S. Boyette, hereby certify that on this date the above brief was served on counsel for Defendants via ECF.

Respectfully Submitted,

*/s/ Joshua S. Boyette*

Joshua S. Boyette, Esq.

DATED: February 20, 2012